**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| J. GREG HORINEK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 24-1171-KHV |
| | ) | |
| SPIRIT AEROSYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On June 27, 2024, in the District Court of Sedgwick County, Kansas, plaintiff J. Greg Horinek filed suit against his former employer, Spirit AeroSystems, Inc., alleging race discrimination in violation of 42 U.S.C. § 1981 and retaliation for reporting unlawful acts in violation of Kansas public policy. See Pretrial Order (Doc. #55) filed July 2, 2025. On September 23, 2024, defendant removed the case to federal court. On December 8, 2025, the Court conducted a jury trial which lasted for four days. On December 11, 2025, the jury returned its verdict in favor of Horinek on all claims. On each claim, the jury awarded plaintiff $250,000 in non-economic damages, $250,000 in economic damages, and $1,000,000 in punitive damages, for a total of $1,500,000. With the parties' consent, to conform the verdict with the evidence and the claims, the Court immediately remitted the $250,000.00 economic damage verdict to $11,497.60. See Trial Transcript Volume 4 (Doc. #130) filed December 23, 2025 at 781:6–782:13. After remittitur, the total award to plaintiff on both counts was $2,261,497.60.[1]

This matter is before the Court on Defendant Spirit AeroSystems, Inc.'s Motion For

---

[1]     Prior to jury deliberation, the parties stipulated that plaintiff's compensatory damages for racial discrimination and retaliatory discharge were indivisible, so if the jury awarded compensatory damages, plaintiff would only recover once.

Judgment As A Matter Of Law (Doc. #132) and Defendant Spirit AeroSystems, Inc.'s Motion For Remittitur Or In The Alternative, For Relief Under Rule 59 (Doc. #133), both filed January 8, 2026. Defendant first seeks judgment as a matter of law on the punitive damage awards, then asks the Court to remit plaintiff's compensatory and punitive damages or, in the alternative, to order a new trial. In seeking remittitur, defendant does not suggest what remittitur would satisfy its objections.

For the reasons stated below, the Court overrules defendant's motions.

## I.    Defendant's Motion For Judgment As A Matter Of Law On Punitive Damage Awards

Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences to the contrary. See Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999); Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir. 1991). In other words, defendant is not entitled to judgment unless all the evidence, viewed in the light most favorable to plaintiff, reveals no legally sufficient evidentiary basis to find for plaintiff. See Burrell v. Armijo, 603 F.3d 825, 832 (10th Cir. 2010). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987). Courts should "cautiously and sparingly" grant judgment as a matter of law. Rule 50(b), Fed. R. Civ. P.; Zuchel v. City & Cnty. of Denver, 997 F.2d 730, 734 (10th Cir. 1993).

In determining whether to grant judgment as a matter of law, the Court may not weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. See Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring plaintiff; it must find that evidence was before the

jury upon which it could properly find against defendant.  Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).

Defendant argues that the evidence at trial was insufficient for a reasonable jury to award punitive damages for either race discrimination or retaliatory discharge.

A.      Punitive Damages For Race Discrimination Under 42 U.S.C. § 1981

To recover punitive damages on a Section 1981 claim, plaintiff must establish that defendant's discrimination was malicious, willful and in gross disregard of plaintiff's rights. Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1115 (10th Cir. 2001).  Here, defendant does not dispute the jury verdict as to liability or the award of compensatory damages for race discrimination.  Defendant's argument is that standing alone, intentional discrimination does not establish such malice, willfulness or gross disregard of plaintiff's rights as to warrant punitive damages and plaintiff did not meet his burden of proof as to punitive damages.  Specifically, defendant argues that since plaintiff only presented indirect evidence of discrimination, he did not establish willfulness.  The Court agrees with defendant that the proof of intentional discrimination does not, standing alone, justify punitive damages.  But what more must be shown to establish malice, willfulness or gross disregard of plaintiff's rights?  The United States Supreme Court answered that question in Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536–37, 119 S. Ct. 2118, 2125 (1999): plaintiff must prove the employer's knowledge that it may be acting in violation of federal law.  In other words, to be liable for punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law."  Id.  The Supreme Court conversely described circumstances where intentional discrimination does not give rise to liability for punitive damages:

In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

Id.  Here, defendant did not claim to be unaware of the relevant federal prohibition on race discrimination, that it discriminated with the distinct belief that its discrimination was lawful, that plaintiff's theory of discrimination was novel or otherwise poorly recognized, or that it reasonably believed that its discrimination fell within a statutory exception to liability.

The jury heard testimony regarding defendant's training policies, diversity initiatives, potential racial quotas that preferred other races over plaintiff's, disparate treatment of Ivan Quintanar and other shop workers, and defendant's stated reason for firing plaintiff—a 17-year employee—for trashing a part worth less than $2.00.  Trial Transcript Volume 3 (Doc. #128) filed December 23, 2025 at 534:5, 560:21, 562:19.  It also heard conflicting stories from defendant about how much production delay (if any) plaintiff had caused by trashing the part, and who made the decision to terminate his employment.  The jury could have reasonably concluded that defendant willfully discriminated against plaintiff in order to promote or retain Hispanic employees, and that as to plaintiff, defendant did so in the face of a perceived risk that its actions would violate federal anti-discrimination law.  Therefore, the evidence was sufficient to support the jury's conclusion that defendant's conduct was malicious or done with reckless indifference to plaintiff's rights.  See Hampton, 247 F.3d 1091, 1115.  Such proof was sufficient to sustain an award of punitive damages.  Plaintiff was not required to prove that defendant's conduct had some independently egregious quality.  Kolstad, 527 U.S. 526, 536–37.

Defendant does not challenge the Court's jury instruction on punitive damages for race discrimination.[2]   The evidence on this point was not so one-sided that the jury had no legally sufficient basis to award punitive damages.  See Burrell, 603 F.3d 825, 832.  Therefore, the Court declines to disturb the jury's decision to award punitive damages.

B.      Punitive Damages For Retaliatory Discharge Under Kansas Law

Defendant argues that punitive damages for retaliatory discharge are inappropriate for the reasons stated above, and also because Kansas law required that plaintiff prove his retaliatory discharge claim (including actual and punitive damages) by "clear and convincing evidence."

---

[2]      Instruction No. 19 of the Jury Instructions (Doc. #120) filed December 11, 2025 was as follows:

> If you find from a preponderance of the evidence that plaintiff is entitled to actual damages for race discrimination under Instruction No. 14, you may—but are not required to—award punitive damages on that claim. Punitive damages may be imposed to punish the wrongdoer for extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.
>
> To award punitive damages for race discrimination, you must find by a preponderance of the evidence that defendant acted with malice or reckless indifference to plaintiff's federal right not to be discriminated against because of his race. "Malice" means to act with an evil motive with knowledge that discriminating against plaintiff was in violation of federal law. An act is done with "reckless indifference" if it is done in reckless or callous disregard of, or indifference to, the rights of plaintiff. In other words, plaintiff must prove by a preponderance of the evidence that defendant acted with an evil motive or with reckless disregard of that law. . . .
>
> Proof that defendant engaged in intentional discrimination is not enough in itself to justify an award of punitive damages. But you may award punitive damages if you find from a preponderance of the evidence that management officials of defendant personally acted with malice or reckless indifference to plaintiff's rights under federal law and defendant had not made good faith efforts to adopt and enforce policies and procedures designed to prohibit such discrimination in the workplace. Any award of punitive damages must be fixed with calm discretion and sound reason, and must never be awarded, or fixed in amount, because of any sympathy, bias or prejudice with respect to any party to the case.

Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d 1260, 1276 (10th Cir. 2008).  Defendant

acknowledges that at the end of the trial, the Court properly instructed the jury that plaintiff must

prove retaliatory discharge, and all damages resulting therefrom, by clear and convincing

evidence.[3]  Defendant argues that at the beginning of trial, however, the Court verbally instructed

---

[3]    Instruction No. 10 of the Jury Instructions (Doc. #120) read as follows:

Burden of proof means burden of persuasion. . . .  As to plaintiff's claim for
retaliatory discharge, plaintiff must persuade you that his claim is true by clear and
convincing evidence. Clear and convincing evidence means evidence which shows
that the truth of the fact asserted is highly probable.

Instruction No. 15 read as follows:

To establish plaintiff's claim for retaliatory discharge, plaintiff must prove by clear
and convincing evidence under Instruction No. 10 that each of the following
elements is true. . . . If plaintiff proves each of the above elements by clear and
convincing evidence, you must return a verdict in his favor. If not, you must return
a verdict for defendant.

Instruction No. 17 read as follows:

If you find that defendant is liable under Instruction Nos. 14 or 15, you must
determine the amount of plaintiff's damages.  You should allow plaintiff such
amount of money as will fairly and reasonably compensate him for any damages
which defendant proximately caused by its unlawful conduct.  You may allow
plaintiff any compensatory damages shown by the evidence, including any
economic damages, emotional distress, mental anguish or loss of enjoyment of life
which he suffered as a result of defendant's unlawful conduct. . . .

Instruction No. 20 read as follows:

If you find by clear and convincing evidence that plaintiff is entitled to actual
damages for retaliatory discharge under Instruction No. 15, you may—but are not
required to—award punitive damages on that claim. . . . To award punitive damages
for retaliatory discharge, you must find by clear and convincing evidence that in
violating plaintiff's rights, defendant acted in a willful or malicious manner. . . . In
other words, plaintiff must prove by clear and convincing evidence that defendant
acted with an evil motive or with reckless disregard of that law.

the jury that plaintiff's retaliation claim only required a preponderance of the evidence, which was erroneous, prejudicial and confusing to the jury.

Defendant claims that the Court misstated plaintiff's burden of proof on the retaliation claim on five separate instances.  See Defendant Spirit AeroSystems, Inc.'s Motion For Judgment As A Matter Of Law (Doc. #132) at 8.  Two of the alleged misstatements were outside the hearing of the jury, however, and the Court does not address them.[4]  The first misstatement in the presence

---

[4]    Outside the hearing of the jury, on December 10, 2025, the third day of trial, the Court and counsel had the following conversation:

> THE COURT: [we] are working on the jury instructions now, but my recollection of Kansas law about the clear and convincing evidence for retaliatory discharge is that clear and convincing evidence is not a higher standard of proof but just burden of proof by clear and convince -- a preponderance of the evidence by clear and convincing evidence. Is that --
> MS. SCHECK: Yes.
> THE COURT: -- your understanding?
> MS. SCHECK: Which creates a higher standard of proof.
> THE COURT: I guess. I mean, I don't know exactly what it means, but we do have the language from the cases and we'll make sure that that's reflected in the instructions.
> MS. SCHECK: Yeah, clear and convincing is a claim highly probable supported by firm and convincing evidence. So it is a higher standard of proof is what we would argue.
> THE COURT: Okay. All right. We'll bring the jury in five minutes if that's all that we have."

Transcript Vol. 3 440:18-441:10.  The dialogue continued as follows:

> MS. SCHECK: I do want to clarify, and I can submit some cases on the burden of proof on the clear and convincing standard, where Kansas courts has been adopted by the Tenth Circuit that the clear and convincing standard is considered an intermediate standard of proof in between clear -- in between preponderance of the evidence and –
> MR. VANFLETEREN: The reasonable doubt.
> MS. SCHECK: -- yes, the reasonable doubt standard.
> THE COURT: I know what the law is on that, and we don't need to talk about it until jury instructions anyway. So unless you're concerned about the actual

(continued. . .)

of the jury was on December 8, 2025, just minutes into the first day of trial, when the Court told

the jury what the case was about:

> So as I said, this is a civil case by plaintiff, Greg Horinek, who alleges that his former employer, Spirit AeroSystems, racially discriminated against him in violation of the Civil Rights Act, which is, United States Code, Section 1981, and retaliated against him for reporting unlawful acts of -- unlawful acts in violation of Kansas public policy.  Plaintiff claims that defendant terminated his employment because of racial discrimination against him as a White person and as retaliation for whistle-blowing on unlawful activity of a co-worker. Defendant denies plaintiff's claims.  And I want to emphasize that at this point plaintiff's claims are only allegations.  The purpose of this trial is to give plaintiff the opportunity and the burden of proving that his claims are true by a preponderance of the evidence. This is something we refer to as the burden of proof.  And preponderance of the evidence means that plaintiff must show that his claims are more probably true than not true. An easy way to think about that is that if you took the scales of justice and you put all of plaintiff's evidence on this side, all of defendant's evidence on this side, it's plaintiff's responsibility -- if you are to return a verdict in his favor, it's plaintiff's responsibility to make those scales tip in his favor. They don't have to tip totally to one side, but they have to tip somewhat in his favor by proof that you're convinced is more probably true than not true.

Transcript Volume 1 (Doc. #125) filed December 23, 2025 at 25:9-26:9.

The second misstatement also occurred on the morning of December 8, 2025.  When

questioning a potential juror about his prior service on a criminal jury, the Court referenced

plaintiff's burden of proof as follows:

> I'm sure you don't remember the details of the instructions which the judge in Cowley County gave you at the end of the case 30 years ago, but in a criminal case in order to convict the defendant, the government must show beyond a reasonable doubt that the defendant did do the acts which are charged . . . in the criminal activity. In a civil case like this, the burden of proof is lighter.  As I mentioned before, it's only what is more likely true than not true.  Would you have any

---

[2](. . .continued)
instructions –
MS. SCHECK: Yeah.
THE COURT: -- you don't need to do that.

Transcript Vol. 3 604:20-605:7.

problem distinguishing those two burdens of proof and applying the preponderance of the evidence standard under my instructions?

Id. at 46:11-25.

The third instance was also on December 8, 2025, after returning from lunch break, immediately after opening statements.  Noting the transition from opening statements to the presentation of evidence, the Court made the following statement:

So at this point we'll move into the presentation of evidence. As I told you, because this is a civil case, plaintiff has the burden of proving his claims by what you call a preponderance of the evidence, that is evidence which considered all together [and] drawing reasonable inferences therefrom shows that his claims are more probably true than not true.

Id. at 118:13-19.

A litigant is entitled to a fair trial but not a perfect one.  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553, 104 S.Ct. 845 (1984).  The Court acknowledges that it made three statements which conflated distinct burdens of proof for racial discrimination under federal law (preponderance of the evidence) and retaliatory discharge under Kansas law (clear and convincing evidence).  As to retaliatory discharge, the statements were in error.  Defendant did not make a contemporaneous objection to any of the three misstatements, however, and the Court missed the opportunity to correct its error in real time.  See Taylor v. Denver and Rio Grande Western Railroad Co., 438 F.2d 351, 353 (10th Cir.1971).  Likewise, defendant did not seek an instruction at the end of the case, directing the jury to disregard the misstatements.

Overall, the Court finds that its statements, very early on the first day of trial and before the presentation of evidence, did not impair defendant's right to a fair and impartial trial.  This is especially true since the written jury instructions three days later on December 11, 2025, after the close of the evidence and immediately before closing arguments, properly instructed the jury.  The

Court read instructions which stated the correct burden of proof, and each juror had a copy of the written instructions which accurately stated the law. The Court assumes that the jury followed the written instructions at the end of the case. Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty., 10 F.4th 978, 992 (10th Cir. 2021). The record contains no evidence that the jury remembered the early, erroneous statements by the Court, let alone evidence that those statements confused the jury. The jury did not ask questions about any discrepancy, and—as noted—defendant did not object to the Court's misstatements or seek any kind of curative instruction at the end of the case.

Defendant has not established that the Court's misstatements prejudiced the jury, affected its substantial rights, or affected the essential fairness of the trial. Moreover, even if the statements warrant a remedy, the remedy would not be judgment as a matter of law but a new trial. See Affiliated FM Ins. Co. v. Neosho Const. Co., 192 F.R.D. 662, 668 (D. Kan. 2000) n. 1; Greenwood, 464 U.S. 548, 553. The evidence was not so one-sided that viewed in the light most favorable to plaintiff, it provided no legally sufficient evidentiary basis to award punitive damages for retaliatory discharge. See Burrell, 603 F.3d 825, 832. Therefore, the Court declines to disturb the jury's decision to award punitive damages.

## II.     Defendant's Motion For Remittitur Or In The Alternative, For Relief Under Rule 59

Defendant asks the Court to remit plaintiff's compensatory and punitive damages, or alternatively to order a new trial pursuant to Rule 59, Fed. R. Civ. P.

The Court exercises discretion in deciding whether to grant remittitur based on an excessive damage award. Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998). The Court considers the jury award inviolate so long as it is not so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial. See Prager v. Campbell Cty. Mem'l Hosp., 731 F.3d 1046, 1062 (10th

Cir. 2013); Capstick v. Allstate Ins. Co., 998 F.2d 810, 820 (10th Cir. 1993).  Defendant bears the heavy burden of demonstrating that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence."  Blanke, 152 F.3d at 1236 (citations and quotations omitted).  In determining whether an award of punitive damages is excessive, the Court considers the following factors: (1) the nature of the act which caused the injury; (2) the economic status of defendant; and (3) the deterrent effect of the award on others.  See Capstick, 998 F.2d at 820.

Under Rule 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  In deciding whether to grant a motion for new trial, the Court exercises broad discretion.  See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997).  The Court generally regards motions for new trial with disfavor and grants them only with great caution.  See Franklin v. Thompson, 981 F.2d 1168, 1171 (10th Cir. 1992); Utility Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc., 734 F. Supp. 2d 1210, 1216 (D. Kan. 2010).  The party seeking to set aside a jury verdict must demonstrate prejudicial trial error or that the verdict is not based on substantial evidence.  Anderson v. Phillips Petroleum Co., 861 F.2d 631, 637 (10th Cir. 1988), overruled on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993); White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983).  Motions for a new trial call for an examination of the prejudicial impact of an error when viewed in the context of an entire case, and the Court may only disturb the jury verdict if prejudicial errors impaired the movant's right to a fair and impartial trial. Owens v. Unified Gov't of Wyandotte Cnty. & Kansas City, Kansas, 100 F.4th 1177, 1181 (10th Cir. 2024).  In reviewing a motion for new trial, the Court views the evidence in the light most favorable to the prevailing party.  See Griffin v. Strong, 983 F.3d 1544, 1546 (10th Cir. 1993). The Court ignores errors that do not affect the essential fairness of the trial.  Greenwood, 464 U.S. 548,

-11-

553.

Defendant argues that the Court should remit plaintiff's damages or order a new trial because (1) the punitive damages are unconstitutionally excessive, (2) the compensatory damages are not supported by the evidence, (3) the jury was improperly influenced by passion and prejudice and (4) the Court erred in its instructions to the jury.

A.    Whether Plaintiff's Punitive Damage Award Is Unconstitutionally Excessive

Punitive damages may be imposed to further the state's legitimate interest in punishing unlawful conduct and deterring its repetition.  Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 3012 (1974).  Here, the jury awarded punitive damages to punish defendant for what it determined was extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

Only when an award is "grossly excessive" in relation to those legitimate interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595 (1996).  In analyzing the constitutionality of punitive damages, the Supreme Court has instructed courts to look to (1) the degree of reprehensibility of defendant's action; (2) the disparity between the punitive damage award and the actual or potential harm suffered by plaintiff; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases.  Id.

For the first prong, to determine the reprehensibility of defendant's conduct, courts consider whether the harm caused was physical as opposed to economic; whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; whether the target of the conduct had financial vulnerability; whether the conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery or

deceit or mere accident.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).  Here, as noted, the verdict awarded plaintiff non-economic damages of $250,000.00 for emotional distress and (after remittitur) $11,467.60 for economic damages, for a total of $261,497.60 in compensatory damages.  On the retaliatory discharge claim, the jury found that defendant acted with reckless indifference or malice by terminating plaintiff's employment because he reported serious violations of Kansas criminal law, which are laws concerning the health and safety of others.  Plaintiff was financially vulnerable.  The conduct for which plaintiff sought relief (the termination of his employment) was a single incident, but the evidence revealed a history of discrimination and retaliation.  Overall, the jury could reasonably find that defendant's conduct was highly reprehensible, especially in light of the fact that plaintiff was a 17-year employee and defendant fired him for trashing a $2.00 part, then offered shifting and inconsistent explanations.

Defendant argues that under the second prong—the disparity between the punitive damage award and the actual harm—plaintiff's punitive damages should be limited to a 1:1 ratio of punitive damages to compensatory damages, since the latter damages were substantial.  In this regard, defendant relies on BMW of N. Am., Inc. v. Gore, 517 U.S. at 582.  In BMW, the Court refused to draw a mathematical bright line between constitutionally acceptable and unacceptable ratios, and instead found that punitive damages must bear a reasonable relationship to compensatory damages.  Id.  Thus, "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages."  Id.  In State Farm, 538 U.S. at 425, the Court held that the converse is also true, that substantial compensatory awards may require a lesser ratio, "perhaps only equal to compensatory damages," and that in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process.

Defendant overstates the holdings in BMW and State Farm, which did not hold that punitive damages must be limited to a 1:1 ratio with any "substantial" compensatory award. Both cases actually rejected bright-line rules. Instead, the Court looks to whether the punitive damage award bears a reasonable relationship to the harm that actually occurred. Here, the jury reasonably found that defendant terminated plaintiff's employment due to racial discrimination and retaliation for whistleblowing—conduct which the jury could rightly find is particularly egregious. Further, the ratio between punitive damages ($1,000,000) and the post-remittitur actual damages ($261,497.60) on each claim is 3.825:1, with the total punitive award at 7.65:1, which is well within the generalized single-digit range given by State Farm and is not unreasonable, especially when compared to the ratios in BMW and State Farm—500:1 and 145:1, respectively.

As to the third prong, defendant argues that Title VII sets a maximum statutory penalty of $300,000 for similar conduct, which shows that a punitive damages award of $2,000,000 is excessive.[5] Alternatively, defendant argues that it lacked fair notice that punitive awards totaling $2,000,000 were possible, since Jones v. United Parcel Service, Inc., 674 F.3d 1187, 1207 (10th Cir. 2012), capped punitive damages to a 1:1 ratio. In a retaliation case for filing a workman's compensation claim, Jones held that the punitive damages award of $2,000,000 was constitutionally excessive using these three factors. There, plaintiff only sustained economic injury, defendant did not act in disregard for the health and safety of others, actual damages of $630,307 were substantial in light of the injuries suffered and comparable cases found the jury award excessive. Id.

Since 42 U.S.C. § 1981 has no statutory damage cap, the Court declines to import the

---

[5]     The relevant number to compare to Title VII's statutory maximum would be the punitive damage award for race discrimination, $1,000,000, not the total punitive damage award.

maximum from Title VII.  See Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1117 (10th Cir. 2001) (declining to use Title VII statutory cap in third prong analysis).  Furthermore, Jones is not a useful case to compare to the present case, because intentional discrimination on the basis of race is especially reprehensible.  See e.g. Flores v. City of Westminster, 873 F.3d 739, 760 (9th Cir. 2017).  In Jones, plaintiff's actual damages were entirely economic and defendant did not act in disregard for the health and safety of others.  A more comparable case is Hampton, which upheld a jury award of $56,000 in compensatory damages and $1,100,000 in punitive damages, a 20:1 ratio, on a race discrimination claim under Section 1981.  Id. at 1116.  Though the Tenth Circuit decided Hampton before the Supreme Court noted that few awards exceeding a single-digit ratio will satisfy due process, Hampton performed the same constitutional analysis as here and certainly put defendant on notice that in this day and age, race discrimination claims can result in large punitive damages awards.

In addition, Kansas law limits punitive damages for large corporations like Spirit to $5 million.  K.S.A. § 60-3702(e)(2).  Complaints about the reasonableness of a punitive damages are much less persuasive when they are within a legislatively prescribed cap.  See E.E.O.C. v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1249 (10th Cir. 1999).  Therefore, Spirit, which is headquartered in Kansas, was on notice that it could be punished up to $5 million for willfully violating the law with regard to retaliatory discharge.

In addition to the BMW factors, the Tenth Circuit permits consideration of the defendant's economic status when determining whether the punitive damages award is excessive.  See Cont'l Trend Res., Inc. v. OXY USA Inc., 101 F.3d 634, 641 (10th Cir. 1996) (wealth of defendant must remain relevant for punitive award to deter future behavior).  Defendant is a large company, and on the first day of trial, defendant asked the Court to inform the jury that it was acquired as a

wholly-owned subsidiary of the Boeing Company.[6] The jury heard testimony that Spirit is a global company and is a large employer in the city. Trial Transcript Volume 3 (Doc. #128) at 463:8-13. Given defendant's stature as a substantial corporation in Wichita, a $2,000,000 punitive damage award—under the Kansas statutory cap—does not shock the conscience. The jury could reasonably find that an award of such magnitude was necessary to fulfill the fundamental purpose of punitive damages: to deter future misconduct by defendant and others. See Capstick, 998 F.2d 810, 822 ("While the Due Process Clause requires that punitive damages not be grossly excessive, it does not require that punitive damages be ineffectual and impotent.").

Given the reprehensibility of defendant's conduct, the Court cannot find that the punitive damage verdict was unreasonable or constitutionally excessive. The Court therefore declines to

---

[6] Immediately before trial, on December 8, 2025, defendant's counsel and the Court had the following conversation:

MS. SCHECK: So as of this morning, the -- the Boeing transaction did close.

THE COURT: Okay.

MS. SCHECK: And so it doesn't impact the trial at all except for on the questions about does anyone know anyone who works at Spirit or have you worked at Spirit before. I think we would need to have you ask the question Spirit is now a wholly owned subsidiary of the Boeing company. And so just voir dire questioning I think we would need to add that to the line of questions.

THE COURT: So I probably will let you do that since this is late breaking news. I'll try to cover that. But if I forget it, then you follow up. I assume that will be a big story down here [in Wichita] in the news or at least a story.

MS. SCHECK: It's been a story for a year that it's -- that the transaction was happening. It's just waiting for approval, and it happened last week. . . .

Transcript Volume 1 (Doc. #125) at 17:1-17. Defendant chose not to ask potential jury members questions about Boeing, while plaintiff, without objection, did ask some, concerning if the merger would affect the juror's ability to be fair. See id. at 17-67.

remit or eliminate the punitive damage awards, or order a new trial on punitive damages.

        B.        <u>Whether The Evidence Supports Plaintiff's Compensatory Damages Award</u>

By way of economic damages, plaintiff only sought $11,497.60 for interest accrued on credit card debt which he incurred for living expenses after defendant terminated his employment. The jury awarded plaintiff $250,000 in economic damages, which counsel agreed to remit to $11,497.60 to recover the credit card interest. Defendant asks the Court to further remit plaintiff's economic damages to $0 because plaintiff did not present evidence that linked his credit card interest to the termination of his employment. Plaintiff testified that he endured financial hardship after defendant terminated his employment, however, and he presented credit card statements which showed interest incurred from the termination of his employment to when he was reinstated.[7] Defendant had the opportunity to impeach this evidence at trial, but it did not even try to do so. This award does not shock the judicial conscience; it has evidentiary support and is not excessive. Therefore, the Court declines to reduce the award or grant a new trial on economic damages.

        C.        <u>Whether The Jury Was Improperly Influenced By Passion And Prejudice</u>

Defendant argues that the punitive damage award is excessive under common law standards and should be remitted. The Court exercises discretion in deciding whether to grant remittitur based on an excessive damage award. <u>Blanke</u>, 152 F.3d 1224, 1236 (10th Cir. 1998). The Court considers the jury award inviolate so long as it is not so excessive or inadequate as to

---

[7]    Defendant's motion argues that these interest statements "do not even total the requested damages amount," but does not state what it thinks the amount should be. <u>Motion For Remittitur Or New Trial</u> (Doc. #133) at 8. By the Court's calculation, plaintiff misstated his claim by nine cents. Since defendant did not request remittitur to that amount, the Court declines to order it.

shock the judicial conscience and raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.  See Campbell, 731 F.3d 1046, 1062 (10th Cir. 2013); Capstick, 998 F.2d 810, 820 (10th Cir. 1993).  Defendant bears the heavy burden of demonstrating that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." Blanke, 152 F.3d at 1236 (citations and quotations omitted).  Defendant points to prejudice arising from (1) plaintiff's mention of Boeing during the trial, (2) comparator evidence and (3) the unsupported award of $250,000 in actual damages.

> i.      Boeing

Defendant argues that the jury was prejudiced because plaintiff mentioned Boeing, a non-party.  Defendant cites two such references—both during plaintiff's closing argument.[8]  Defendant did not object to either reference at trial or seek a limiting instruction.  In fact, defendant had asked the Court to question potential jury members about Boeing, since Spirit had become a wholly-

---

[8]      On December 11, 2025, plaintiff's counsel argued during closing:

> So Spirit AeroSystems is a global company that brings in north of a billion a year. And this week you got to see behind the curtains.  You got to see how this place really works.  It's the biggest employer in the state probably and now it's got a new parent—Boeing.

Trial Transcript Volume 4 (Doc. #130) at 755:10-14.  Plaintiff's counsel later stated:

> Well, know how to seek guidance.  Okay, how do we seek guidance?  Ask yourself what would my family or friends think?  Well, Spirit just got adopted this week. It's got a new mom.  Her name is Boeing.  I don't know what Boeing is going to think about whistleblower retaliation, okay.  I don't know if they'll care.  But what if this goes viral? Think about that.  Speak to these people in a language they understand, and that's money.  They listen to Wall Street.

Id. at 764:6-13.  Defendant did not contemporaneously object to either statement or seek an instruction for the jury to disregard them.

owned subsidiary of Boeing on the morning of the first day of trial and that fact was in the news. Trial Transcript Volume 1 (Doc. #125) at 17:1.  Defense counsel agreed that the Boeing acquisition had been a big piece of local news in Wichita over the last year, and acknowledged that most of the jury pool likely already knew of the Boeing/Spirit merger.  During jury selection, however, defendant elected not to question jurors about prejudice against Boeing or whether the acquisition might impact their deliberations.  Overall, in these circumstances, the Court is convinced that the passing references did not prejudice the jury and they therefore afford no basis for a new trial.

ii.        Comparator Evidence

Defendant argues that the jury was prejudiced by evidence concerning defendant's response to Ivan Quintanar's misconduct in 2023, two to six months after the termination of plaintiff's employment.  This evidence generally included an incident on June 14, where Quintanar was accused of creating a hostile work environment, complaints about Quintanar, incidents on July 17 and 19, where Quintanar falsified documentation, an interview between HR and Quintanar on July 17, concerning allegations that he was creating a hostile work environment, problems with Quintanar and whether to move his shift, and an incident on August 16, where Quintanar caused a work stoppage.  According to defendant, this evidence involved different decisionmakers and different categories of conduct, which invited the jury to infer discriminatory intent to explain the difference in treatment between plaintiff and Quintanar, and that it should have been excluded under Rule 403, Fed. R. Evid.

Before jury selection, on the first morning of trial, defendant asked the Court to exclude this evidence.  The Court overruled its motion.  Trial Transcript Volume 1 (Doc. #125) at 9:16–15:10.  The Court ruled that plaintiff's supervisor, Jasen Venn, was directly involved in these instances, that the evidence was closely related in time to the termination of plaintiff's employment

-19-

on March 9, 2023, and the question whether Quintanar's conduct was substantially similar to plaintiff's conduct was for the jury to determine. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388, 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008). For substantially the same reasons it overruled defendant's original motion—that the evidence was relevant and not unduly prejudicial under Rule 403—the Court overrules defendant's motion for a new trial on that question.

        iii.        Economic Damages

Defendant argues that the jury's original award of $250,000 in economic damages demonstrates that the jury did not carefully follow the instructions and reached its verdict based on improper considerations.

The Court agrees that in awarding plaintiff $250,000 in economic damages—more compensatory damages than he proved or even claimed—the jury may have been confused. Any confusion, however, was understandable.

Instruction No. 12 instructed the jury that plaintiff was seeking $11,497.60 in economic damages for interest on credit card debt. In a union arbitration, plaintiff had already recovered economic damages and had been reinstated to his position with defendant.[9] Aside from attorney's

---

[9] Three months before trial, an arbitrator for the Federal Mediation and Conciliation Service sustained plaintiff's grievance under defendant's collective bargaining agreement with the International Association of Machinists, Local 839. As an interim award, the arbitrator ordered defendant to reinstate plaintiff to his position as metals mechanic in department 328-E on the first shift and that defendant confer with the union on what retroactive pay and benefits were due to make plaintiff financially whole, including lost income, payments to procure new medical or dental health insurance coverage, payments to health care providers, lost payments to a roll-over health savings account, lost employer contributions to any profit sharing, pension or retirement plan, and any other direct financial losses. On October 31, 2025, as the final award, the arbitrator ordered defendant to pay plaintiff $103,108.40 in back wages (after subtracting plaintiff's supplemental income which he earned), $28,288.56 in overtime pay, $10,506 to his pension, and $21,143.61 in other bonus and insurance remedies for a total award of $163,046.57 without prejudgment interest.

fees, credit card interest and emotional distress damages, the arbitration award compensated plaintiff for his losses and made him fully whole. Prior to trial, the Court was concerned about whether (and how) this information should be communicated to the jury. Based on its 34 years of experience, the Court feared that because verdicts for wrongful termination and damage awards for lost wages go hand in hand—even among lay jurors—the jury was exceedingly likely to be confused by the fact that plaintiff was not claiming lost wages or benefits for his job loss. At some point, while it was preparing jury instructions, the Court discussed with the parties what details of the union arbitration would be received at trial, stating: "I think we're going to have to say something to the jury about this." See Trial Transcript Volume 1 (Doc. #125) at 6:17-18. Both parties were adamant, however, for reasons related to their independent trial strategies, that the jury not learn anything about the arbitration award. The jury instructions did not explicitly state that plaintiff was not claiming lost wages or benefits and the jury never learned why they were not (and could not be) an issue in the case. To adhere to the parties' wishes, the Court simply instructed the jury in Instruction No. 22: "You may not award plaintiff lost wages or benefits for any period after the termination of his employment on March 9, 2023. Those are not issues for you to decide."

In context, the obvious explanation for the jury's award of $250,000 in economic damages is that, notwithstanding Instruction No. 22, it was intending to award lost pay and benefits. Defendant terminated plaintiff's employment on March 9, 2023 and reinstated him on September 5, 2025, two years, five months and 27 days later. He earned $38 per hour at the time of his termination. Lacking more specific evidence of lost wages and benefits, the jury could have easily (although crudely) estimated them at around $240,000. This amount, added to the credit card interest, would have been entirely consistent with the evidence, even if the jury could not properly award it. On the unique facts of this case, the $250,000 for economic damages award shows

understandable confusion—which the parties jointly induced and could have prevented—but certainly not passion, prejudice, corruption or another improper cause.

Defendant is correct that the $250,000 award was excessive, but within minutes of the jury verdict, while the jury was still in the courtroom, the Court granted a remittitur with the parties' consent.[10]  The remittitur cured any problem with excessive economic damages.  As noted, the parties invited jury confusion on the issue of lost wages and benefits by refusing to explicitly address it at trial.  Here, the record suggests a jury trying to do justice in the face of inadequate evidence and instruction—and certainly not a jury inflamed by passion and prejudice.  The Court therefore declines to grant a remittitur or order a new trial on this ground.

>        D.        Whether The Court Erred In Its Instructions To The Jury

Defendant argues that it is entitled to remittitur or a new trial because the Court refused to instruct the jury on its affirmative defense to an award of punitive damages under Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536–37 (1999): that it made good faith efforts to comply with federal anti-discrimination law. The parties had jointly proposed an instruction on Kolstad, as follows:

> [P]unitive damages cannot be imposed on an employer where its employees acted contrary to the employer's own good faith efforts to comply with the law by implementing policies and procedures designed to prevent unlawful discrimination in the workplace.

> You therefore may not award punitive damages related to Plaintiff's race discrimination claim if you find that Defendant made the following good faith attempts to comply with the law:

> 1. Adopted anti-discrimination policies;
> 2. Made a good-faith effort to educate its employees about these policies and statutory prohibitions;
> 3. Made good-faith efforts to enforce its anti-discrimination policies.

---

[10]        Had the parties not agreed, the Court would have given further instructions and ordered the jury to further deliberate on economic damages.

Proposed Jury Instructions (Doc. #100) filed November 24, 2025 at 18-19.   The proposed instruction did not explain whether to defeat punitive damages, defendant was required to prove good faith efforts or whether to recover punitive damages, plaintiff was required to prove lack of good faith efforts.[11]

Kolstad held that an employer may not be vicariously liable for punitive damages for the discriminatory employment decisions of managerial agents where these decisions are contrary to its good faith efforts to comply with  federal anti-discrimination laws.  527 U.S. 526, 526 (1999); see also Wright v. C & M Tire, Inc., 545 F. Supp. 2d 1191, 1207 (D. Kan. 2008).  To avail itself of the Kolstad good-faith-compliance standard, defendant must at least adopt anti-discrimination policies, make a good faith effort to educate its employees about these policies and the statutory prohibitions, and make good faith efforts to enforce anti-discrimination policies.  McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1138 (10th Cir.2006).

Defendant objected to the lack of a Kolstad instruction, and the Court cited three reasons for declining to give it.  First, the pretrial order did not allege that defendant had made good faith efforts to adopt and enforce policies and procedures designed to prohibit discrimination in the workplace or whether—as required to impute liability to defendant for punitive damages— management officials were acting outside the scope of their employment.  Therefore, that issue was outside the issues for trial.  Second, at trial, defendant presented no evidence or argument that any identified management employee had violated policies and procedures that were designed to prohibit discrimination.  Therefore, factually, such an instruction was unwarranted.  Third, to recover punitive damages, the proposed Kolstad instruction would have required plaintiff to prove

---

[11]     Throughout trial, though the proposed instruction did not so state, defendant referred to its Kolstad argument as a "defense."

not only malice and reckless indifference, but also lack of good faith efforts to adopt and enforce policies and procedures to prohibit discrimination.  Id. at 724-25.  Therefore, the Court declined to separately instruct on Kolstad, pending further instruction by the Tenth Circuit or the Supreme Court on whether such an instruction is an affirmative defense or whether plaintiff must disprove defendant's good faith compliance with Title VII.  See Harsco Corp. v. Renner, 475 F.3d 1179, 1189 n.1 (10th Cir. 2007) ("This Court has not yet decided whether this so-called 'defense' 'represents an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance with Title VII.'" (quoting Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1209 (10th Cir. 2002)).

In retrospect, if the Court did err in instructing on Kolstad, it possibly erred by telling the jury that generally, it could consider the Kolstad elements as relevant factors in deciding whether to award punitive damages.  Specifically, Instruction 19 informed the jury that it could award punitive damages "if you find from a preponderance of the evidence that management officials of defendant personally acted with malice or reckless indifference to plaintiff's rights under federal law and defendant had not made good faith efforts to adopt and enforce policies and procedures designed to prohibit such discrimination in the workplace."  In essence, Instruction 19 incorporated the issue of good faith compliance but perhaps incorrectly placed on plaintiff the burden of proving lack of good faith efforts by defendant.[12]

More to the point, the Court does not need to decide whether Kolstad is an affirmative defense on which defendant has the burden of proof.  The Court declined to give the parties' proposed instruction on Kolstad to avoid jury confusion on issues that were irrelevant under the

_____

[12]      Plaintiff did not object, however, to Instruction No. 19.

pretrial order and the evidence.[13]   For the same reasons, it overrules defendant's motion for remittitur or a new trial.

Defendant also argues that the Court erred by refusing to use the portion of the parties' proposed instruction which reads: "in determining whether defendant's stated reasons for termination of plaintiff are genuine or pretextual, you must examine the facts as they appeared to the people making the employment decision at the time the decision was made." Parties' Proposed Joint Jury Instructions (Doc. #100) at 17.   Defendant made no objection to the Court's failure to give this instruction.   Rule 51, Fed. R. Civ. P. states that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."   Given that defendant did not object, the Court reviews the instruction only for plain error.

A court will reverse due to an instructional error under the plain error standard only in "an exceptional circumstance—one where the error was 'patently plainly erroneous and prejudicial.'" Affiliated FM Ins. Co. v. Neosho Const. Co., 192 F.R.D. 662, 671 (D. Kan. 2000), quoting Giron v. Corrections Corp. of Am., 191 F.3d 1281, 1289 (10th Cir.1999).   Defendant cites no authority that this exclusion was incorrect, let alone prejudicial enough to constitute plain error.   The Court omitted this instruction because it was not necessary.   The Court's decision was not "patently plainly erroneous," if erroneous at all.   Therefore, the Court overrules defendant's motion for remittitur or a new trial.

---

[13]    To avail itself of Kolstad, the Court would have expected defendant to identify a particular management agent whose conduct was contrary to defendant's good faith efforts to comply with federal anti-discrimination law.

-26-

**IT IS THEREFORE ORDERED** that Defendant Spirit AeroSystems, Inc.'s Motion For Judgment As A Matter Of Law (Doc. #132) and Defendant Spirit AeroSystems, Inc.'s Motion For Remittitur Or In The Alternative, For Relief Under Rule 59 (Doc. #133), both filed January 8, 2026 are **OVERRULED.**

Dated this 26th day of May, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge